UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MINISTER DAVID BREWTON, | ) | CASE NO.  1:08cv516 |
| | ) | |
| Plaintiff | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| DEUTSCHE BANK TRUST CO., et al., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants | ) | |

This matter came on for a hearing on the issue of Plaintiff's standing to bring this litigation.  The Court had previously issued a show cause order (Doc. 102) requiring Plaintiff to demonstrate standing.  Plaintiff failed to respond, but did appear for the February 3, 2009, hearing and attempted to argue the standing issue.  For the reasons set forth herein, Plaintiff's action is DISMISSED as Plaintiff lacks standing to pursue his claims.

I.      **Factual background**

On January 10, 2008, the City of Cleveland filed a complaint in state court against twenty-one banks and lending institutions alleging that the defendants had committed a public nuisance by making sub-prime loans to residents of the City of Cleveland who the banks knew were unable to meet their obligations under those loans.  As a result, the City of Cleveland claimed, neighborhoods had suffered blight and loss of property value.  The state court complaint was removed to federal court on January 16, 2008 (Case No. 1:08cv139).  That matter is proceeding through litigation.

Approximately six weeks after the City of Cleveland filed its complaint, Plaintiff in this matter filed a complaint against the same twenty-one banks and lenders.  Defendants removed the Complaint to this Court on February 28, 2008.  Plaintiff's Complaint is nearly the mirror image of the City of Cleveland's complaint in Case No. 1:08cv139.  He has substituted his name

for identifiers of the City of Cleveland in several instances.  (*See* Compl. at 1, 3, 6, 9, 57, 63, 64).[1]  However, all paragraph numbers, content, charts and graphs are nearly identical to the City of Cleveland's complaint[2], with the exception of some headings that Plaintiff has apparently hand-written in his Complaint.

There are only two paragraphs of Plaintiff's Complaint that differ in any substantive way from the City of Cleveland's complaint.  First, at paragraph 3, the City of Cleveland alleged that it had "also strained to cover the more immediate, tangible costs imposed upon it by the crisis, including increased fire and police expenditures associated with vacant property, demolition costs, and the like."  Case No. 1:08cv139, Doc. 1-2 at ¶ 3.  Plaintiff alleges as follows:  "As a resident of the [C]ity of Cleveland, I also am strained to cover the more immediate, tangible costs imposed by the crisis, causing increased individual property taxes, expenditures associated with property valuation due to vacant properties, demolitions, and vandalism."  (Compl. at 3.)

Second, at paragraph 65, the City of Cleveland alleged that it had "suffered damage as the direct and proximate result of the Defendants' unlawful conduct, including (a) the cost of monitoring, maintaining, and demolishing foreclosed properties, and (b) decreased tax revenues resulting from the depreciated value of the affected homes and all surrounding real estate."  Case No. 1:08cv139, Doc. 1-2 at ¶ 65. Plaintiff alleges as follows:  "Minister Brewton suffered damage as the direct and proximate result of the Defendants' unlawful conduct, including (a) the cost of maintaining and securing physical upkeep of property subject to increased criminal activity (theft, burglary, vandalism and prostitution), (b) decrease in property value (including rental property) resulting in environmental health concerns."  (Compl. at 65.)

---

[1] All references to the Complaint in this matter are to the paragraph numbers therein.
[2] Plaintiff's paragraphs 58-61, found on page 25 of the Complaint, are not sequential, but are identical to those in the City of Cleveland's complaint, even bearing the same page number as that in the City of Cleveland's complaint. Apparently, that page was misplaced by Plaintiff within the body of the Complaint.

## II.     Applicable legal standard

Federal courts are limited by Article III of the United States Constitution to adjudicating only actual cases and controversies.  *See Allen v. Wright*, 468 U.S. 737, 750 (1984).  Among the doctrines that accompany this limitation is the doctrine of standing:  "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1974).

The United States Supreme Court has held that, in order to demonstrate standing,

> [f]irst, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal citations and quotations omitted).  In addition to the constitutional standing requirements set forth in *Lujan*, "a plaintiff must meet a set of prudential standing requirements developed by the Supreme Court." *Smith v. Jefferson County School Bd. of Comm'rs*, 549 F.3d 641, 649-50 (6th Cir. 2008).

> First, a complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. Second, plaintiffs generally must assert their own legal rights and interests, and cannot rest their claim to relief on the legal rights or interests of third parties. Third, and finally, plaintiffs must present a claim that is more than a generalized grievance.

*Id.* at 650 (internal citations and quotations omitted).

As a general rule, "a private individual lacks standing to maintain a private action for a public nuisance." *See Miller v. W. Carrollton*, 632 N.E.2d 582, 585 (Ohio App. 1993), *appeal*

*dismissed*, 629 N.E.2d 1365 (Ohio 1994) (Table)[3]; *see also Haas v. Sunset Ramblers Motorcycle Club*, 132 Ohio App. 3d 875, 877 (Ohio App. 1999); *Kramer v. Angel's Path, LLC*, 174 Ohio App. 3d 359, 367 (Ohio App. 2007). However, "[a] private plaintiff may fall within the exception to the general rule by proving that he has suffered some special injury or particular damage not incurred by the public generally." *Miller*, 632 N.E.2d. at 586. Such damage is generally understood to differ in kind rather than degree from the harm suffered by others in the community. *Id.* (citing Prosser, Private Action for Public Nuisance, n.6, Section 88 at 587 (1966)).

## III.    Analysis

Plaintiff has not demonstrated that his injury is special or particular to him. The Complaint details thoroughly the damage done to Cleveland as a result of the diminishment of property values.  This damage is widespread and suffered by all those who live in the areas of Cleveland affected by what has commonly become known as the foreclosure crisis. Details regarding the nature of the damage are stated in the Complaint in terms of injury suffered by all Cleveland residents, because the Complaint was generated by the City of Cleveland in its suit on behalf of its residents against these same banks and lenders.

Despite the unmistakable equivalence between the complaints, Plaintiff asserted during the course of the hearing that he had not copied the City of Cleveland's complaint and that his team of paralegals had written his Complaint for him.  Hg. Tr. at 8-9 (Doc. 117 at 8-9).  This is highly unlikely, given the remarkable similarity—or near sameness—of the two complaints, and the Court is troubled that Plaintiff would make such a claim on the record.

---

[3] The Court assumes without deciding that it has diversity jurisdiction of this matter.  None of Defendants have challenged such jurisdiction.  Furthermore, the Court disposes of this matter on the issue of standing, which is equally jurisdictional.  Therefore, the Court looks to Ohio law regarding the standing of a private plaintiff to raise a public nuisance claim.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)

It is apparent from the transcript of the Motion Hearing that Plaintiff's sentiments regarding the condition of the City of Cleveland are heart-felt, and that he undoubtedly has a great deal of evidence that he would like to present to the Court on the issue.  However, the Court is not permitted to hear evidence when a plaintiff lacks standing.  Unfortunately for Plaintiff, the wholesale use of the City of Cleveland's complaint has only served to demonstrate to the Court that Plaintiff has no particularized injury and therefore lacks standing.  Losses suffered by Plaintiff are the same in kind as the losses suffered by the rest of the residents of the City of Cleveland.  Even if a difference in degree were sufficient to support a private individual's claim for a public nuisance, which it is not (*see Miller*, 632 N.E.2d at 586), Plaintiff has presented no evidence that his alleged losses are so great as to be particularized.  Furthermore, the Court would note that Plaintiff's interests, and the interests of the other residents of the City of Cleveland, are properly being pursued by the City of Cleveland in its litigation.

## IV.    Conclusion

For the reasons stated above, this action is hereby DISMISSED for lack of standing.  During the pendency of this matter, several Defendant banks[4] filed notices of automatic stay in light of the initiation of bankruptcy proceedings.  This dismissal is in reference to all Defendants, including those relative to whom a bankruptcy stay is effective.

IT IS SO ORDERED.

DATE:  February 12, 2009                    */s/John R. Adams*                    
                                            Judge John R. Adams
                                            UNITED STATES DISTRICT COURT

---

[4] The docket in this case reflects that these banks are as follows:  Freemont General Corporation (Doc. 95), IndyMac Bancorp, Inc. (Doc. 98), Lehman Brothers Holdings, Inc. (Doc. 101), and Washington Mutual, Inc. (Doc. 107).